FILED
2025 Sep-10 PM 03:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **BEVERLY BARBER,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CASE NO. 2:25-cv-00671- JHE** |
| | ) | |
| **ROMAN SHAUL and MARK MOODY,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM BRIEF IN SUPPORT OF MOTION TO TRANSFER TO THE HONORABLE JUDGE COREY L. MAZE, OR IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**COMES NOW** the Defendants, Roman A. Shaul and Mark B. Moody ("Defendants" or "Shaul and Moody") and submit this Memorandum Brief in Support of Defendants Motion to Transfer to the Honorable Judge Corey L. Maze, or in the Alternative, Motion to Dismiss Plaintiff's Second Amended Complaint against Roman Shaul and Mark Moody, filed by Beverly Barber ("Barber") (Doc. 7), served upon the Defendants on August 18, 2025, as so reflected on the Return of Service (Docs. 12 and 12.1).

## OVERVIEW

Barber has filed a number of frivolous lawsuits and motions on each of the issues listed in her complaint. The Honorable Judge Corey L. Maze has entered multiple orders dealing with, and disposing of, several claims involving the same operative facts. Beyond the federal court, a state court trial judge, the Supreme Court of Alabama, and the Alabama State Bar Disciplinary Board have all considered variations of Barber's claims and universally ruled against her. This latest missive is identical, in ever substantive way, to the frivolous claims and pleadings that have already been rejected. Because of Judge Maze's familiarity with this matter, and prior rulings, Defendants respectfully request that this Court transfer this lawsuit to Judge Maze for disposition, or in the alternative, dismiss the lawsuit in its entirety.

**STATEMENT OF THE FACTS & PROCEDURAL HISTORY**

In August 2021, Barber filed a civil lawsuit in St. Clair County, Alabama, against her former client. *Barber v. Robinson*, 2024 U.S. Dist. LEXIS 147655, *1-2 (N.D. Ala., August 19, 2024). Barber's former client retained counsel and filed multiple counterclaims against her. *Id*. The client's counterclaims resulted in the state court trial judge entering a $1.7 million-dollar judgment against Barber in a bench trial. *Id*. The state court judge later entered a judgment against Barber for an additional $750,000 resulting from a jury verdict on a separate claim. *Id*. On March 7, 2025, the Supreme Court of Alabama affirmed both state court judgments against Barber, and in doing so, rejected all the same allegations of impropriety that she is asserting in this complaint.[1] (Ex. A) The Supreme Court of Alabama further sanctioned Barber an additional $50,000 for her frivolous filings. (Ex B). The Supreme Court also upheld a number of sanctions previously entered against Barber by the trial judge. *Id*. On April 22, 2025, based in large part on Barber's conduct in her civil lawsuit against her former client, Panel II of the Disciplinary Board of the Alabama State Bar ordered that Barber's license to practice law be suspended. (Ex. C). The disciplinary case has been fully briefed and is currently on appeal to the Supreme Court of Alabama.

Prior to the Supreme Court of Alabama's affirmation of the judgments against Barber, and prior to the suspension entered by the Alabama State Bar, Judge Corey L. Maze entered two opinions that are dispositive of the issues asserted in this federal lawsuit. First, in *Barber v. Mitchell*, 2024 U.S. Dist LEXIS 28615 (N.D. Ala., February 20, 2024), Judge Maze ruled that the federal court did not have jurisdiction over the claims asserted in that lawsuit based on the same operative facts asserted in the instant lawsuit. *Id*. at 8. Secondly, in *Barber v Robinson, supra*, Judge Maze entered an even more

[1] Prior to the Supreme Court of Alabama's final ruling on appeal, it had dismissed a number of mandamus petitions Barber filed involving the same allegations in this lawsuit. *Barber v. Robinson*, 2024 U.S. Dist. LEXIS 147655 at 12-13.

detailed opinion, pointing out that Barber was essentially asking the federal court to "rule on the same issues Barber is perpetually litigating in state court." *Id*. at 13. Again, Judge Maze ruled that the federal court did not have jurisdiction and could not grant the relief she requested. *Id*. at 28. Barber is now requesting that this Court grant essentially the same relief that Judge Maze denied.

Recently, in a separate (but very similar) lawsuit filed by Barber, Judge Maze, again, had the opportunity to enter additional rulings disposing of the issues before this Court. Specifically, on August 25, 2025, Judge Maze denied Barber's request for a temporary restraining order and preliminary injunction based on the lack of jurisdiction. (Ex. D) (noting that, "Barber has filed at least eight federal lawsuits related to a state-court lawsuit she lost to Danny Mitchell."). On August 28, 2025, Judge Maze entered a separate order disposing of additional issues and reiterating that the underlying, operative facts did not provide a basis for federal court jurisdiction. (Ex. E) On September 2, 2025, Judge Maze denied Barber's request to reconsider his prior rulings. (Ex. F).

## I. This matter should be transferred to the Honorable Judge Corey L. Maze.

As previously mentioned, Judge Maze is very familiar with all of the facts, issues and law involved in this matter. He has further entered a number of opinions that are dispositive of the issues asserted in this lawsuit. Pursuant to 28 U.S.C. § 1404, "in the interest of justice," this Court has the authority to transfer this matter to Judge Maze. The interests of both justice and efficiency are served by transferring this case to Judge Maze since both he and his staff have expended an inordinate amount of time and resources becoming familiar with the operative facts. Similarly, a transfer to Judge Maze ensures that different rulings are not entered by different courts in the same jurisdiction over the same operative facts. Lastly, Barber is not prejudiced by a transfer and will have the opportunity to have her claims heard and can also take any appeal she believes is appropriate.

## II. Barber's allegations are impermissible shotgun pleadings and should be dismissed.

Barber here is yet again raising claims pleaded in a shotgun style, all which have been previously adjudicated in both state and federal court. Barber's general claims are that the various rulings against her rise to violations of due process, equal rights, first amendment rights, and that these infringements are being caried out in a conspiracy involving various participants in the state and federal judicial branches of government. As has been the case in Barber's prior pleadings in both state and federal court, her claims are, again, due to be dismissed.

> "A shotgun pleading is a complaint that violates either *Federal Rule of Civil Procedure* 8(a)(2) or Rule 10(b), or both. *Weiland v. Palm Beach Cnty. Sheriff's Off*., 792 F.3d 1313, 1320 (11th Cir. 2015). Rule 8(a)(2) requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P.* 8(a)(2). Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *Fed. R. Civ. P.* 10(b). "If doing so would promote clarity," Rule 10(b) also mandates that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count . . . ." Id. The "self-evident" purpose of these rules is "to require the pleader to present his claims discretely and succinctly, so that[] his adversary can discern what he is claiming and frame a responsive pleading." Weiland, 792 F.3d at 1320 (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co*., 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). These rules were also written for the benefit of the court, which must be able to determine "which facts support which claims," "whether the plaintiff has stated any claims upon which relief can be granted," and whether evidence introduced at trial is relevant. Id. (quoting *T.D.S*., 760 F.2d at 1544 n.14 (Tjoflat, J., dissenting)).
>
> "Shotgun pleadings "are flatly forbidden by the spirit, if not the letter, of these rules" because they are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." Id. (alterations adopted) (quoting *T.D.S*., 760 F.2d at 1544 n.14 (Tjoflat, J., dissenting)). Besides violating the rules, shotgun pleadings also "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Vibe Micro*, 878 F.3d at 1295 (alterations adopted) (internal quotation marks omitted). We have "little tolerance" for them. *Id*.
>
> "[W]e have identified four rough types or categories of shotgun pleadings." *Weiland*, 792 F.3d at 1321. The first is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id*. The second is a complaint that is "replete with

> conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id*. at 1322. The third is a complaint that does not separate "each cause of action or claim for relief" into a different count. Id. at 1323. And the final type of shotgun pleading is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

*Barmapov v. Amuial*, 986 F.3d 1321, 1324-25 (11th Cir. 2021). Barber's claims are, *at best*, shotgun pleadings. In her instant complaint, Barber continues to make wild, conclusory allegations supported with zero facts or evidence. As Judge Maze's prior opinions illustrate, these legal arguments and operative facts do not support any federal claim for relief. The pleadings do not adequately describe any violations of law or entitlement to relief. Barber's complaint is written in a stream of consciousness that, at best, seeks to re-label old arguments that have already been lost. Such re-labeling is not sufficient to overcome the prior rulings entered against her. Because Barber's complaint is most adequately considered a "shotgun pleading," it should be dismissed.

## III. Barber's complaint is due to be dismissed pursuant to the *Rooker-Feldman* doctrine.

Under the *Rooker-Feldman* doctrine, federal district courts lack subject-matter jurisdiction to review a final state court decision. *Seibert v. McIntire, et al,* 2020 U.S. Dist. LEXIS 59568 (N.D. Ala, April 6, 2020); *affirmed* 847 Fed. Appx. 802, (11th Cir. Ala., May 5, 2021); *Doe v. Fla. Bar.,* 630 F.3d 1336, 1340 (11th Cir. 2011); *Caffey v. Alabama Supreme Ct.*, 469 F.App'x. 748, 751 (11th Cir. 2013). In *Feldman*, a case involving a bar applicant's challenge to the District of Columbia's bar admission rules, the Supreme Court held that a "United States District Court has no authority to review final judgments of a state court in judicial proceedings." *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). Rather, "[r]eview of such judgments may be had only in [the United States Supreme] Court." *Feldman*, 460 U.S. at 482. *See* 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be

had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a … statute of any state is drawn in question…"); See also *Dale v. Moore,* 121 F.3d 624, 626 (11th Cir. 1997). ("[T]he authority to review final decisions from the highest court of the state is reserved to the Supreme Court of the United States."). The *Rooker-Feldman* doctrine holds "a district court lacks subject matter jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Caffey* 469 F.App'x. at 751 (11th Cir. 2013) quoting *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005).

For the *Rooker-Feldman* doctrine to apply, this Court must first determine whether the state court rendered judgment "before the district court proceedings commenced." *Exxon,* 544 U.S. at 284. Barber originally instituted this action on August 4, 2025. The Supreme Court of Alabama affirmed all the judgments against her on March 7, 2025. Further, Barber's disciplinary hearing took place March 10 and 11, 2025, and the Alabama State Bar Disciplinary Board, Panel II, issued its ruling on April 22, 2025. As such, the state court and the Alabama State Bar Disciplinary Board rendered judgment before these instant proceedings were commenced. Barber is seeking relief from the state court and the Alabama State Bar Disciplinary Board judgments via this federal lawsuit.

Next, this Court must determine whether Barber is a state-court loser who is complaining of injuries caused by state court judgments. *Exxon,* 544 U.S. at 284. In doing so, this Court should evaluate whether Barber's claims are "inextricably intertwined" with the state court judgment. *Casale v. Tillman,* 558 F.3d 1258, 1260 (11th Cir. 2009); *Alvarez v. Att'y Gen.,* 679 F.3d 1257, 1262 (11th Cir.2012); *Scott v. Frankel*, 562 F. App'x 950, 953 (11th Cir.) *cert. denied*, 135 S. Ct. 265 (2014). "A claim is inextricably intertwined if it would effectively nullify the state court

judgment or it succeeds only to the extent that the state court wrongly decided the issues." *Casale,* 558 F.3d at 1260; *Alvarez,* 679 F.3d at 1262); *Scott*, 562 F. App'x at 953. Here, Barber is clearly seeking relief from the state court judgments and seeks relief that would "nullify the state court judgment" entered by both the Supreme Court of Alabama and the Disciplinary Board of the Alabama State Bar.[2] Therefore, all of Barber's claims are inextricably intertwined with the underlying state court judgments, and outside the jurisdiction of this Court under the *Rooker-Feldman* doctrine.

Barber's request for relief from orders entered by the Alabama State Bar Disciplinary Board matter is also barred. The *Feldman* Court noted that, "the interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'" (internal citations omitted). *Feldman*, 460 U.S. at 483 n 16. The *Feldman* Court then quoted, with approval, the 9th Circuit's decision in *MacKay v. Nesbett*, 412 F.2d 846, 846 (9th Cir. 1969):

> "[O]rders of a state court relating to the admission, discipline, and disbarment of members of its bar may be reviewed only by the Supreme Court of the United States on certiorari to the state court, and not by means of an original action in a lower federal court. The rule serves substantial policy interests arising from the historic relationship between state judicial systems and the members of their respective bars, and between the state and federal judicial systems."

*Feldman*, 460 U.S. at n 16. Because of the aforementioned, this Court should dismiss this matter based on the *Rooker-Feldman* doctrine.

**IV. Barber fails to allege she suffered an injury in fact, traceable to a challenged act of Shaul or Moody.**

---

[2] For purposes of this motion, the Disciplinary Board has the same authority as a state circuit court in the State of Alabama. Rule 4.2(b)(5), *Alabama Rules of Disciplinary Procedure* ("For purposes of all hearings and proceedings, the Disciplinary Hearing Officer shall have the power and immunity of a circuit judge…) see also *Alabama State Bar v. Watson*, 272 So.2d 240, 242 (Ala. 1972)("The Board of Bar Commissioners is a board of statewide jurisdiction, not limited to any county, and is not inferior to circuit courts.")

Barber fails to fully articulate whether or how she has been injured by any of the Defendants in this case sufficient to establish standing. It is clear that all of Barber's injuries, if any at all, occurred when the Supreme Court of Alabama affirmed the monetary judgments against her and awarded an additional $50,000 as a sanction for her misconduct. Similarly, injuries related to her law license, if any at all, were the result of a full-blown disciplinary hearing in which the Disciplinary Board, not Defendants, entered a judgment against her.

The mere fact "[t]hat a plaintiff seeks relief …, does not relieve him of the burden of satisfying the prerequisites for standing, since 'a declaratory judgment may only be issued in the case of an actual controversy.'" *DiMaio v. Democratic Nat. Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) quoting *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir.1985). In *DiMaio* the Eleventh Circuit Court of Appeals further expounded:

> We have thus held that "[t]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Elend,* 471 F.3d at 1205–06 (internal quotation marks omitted). "It is not enough that 'the [plaintiff]'s complaint sets forth facts from which we could imagine an injury sufficient to satisfy Article III's standing requirements.' " *Id.* at 1206 (quoting *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n,* 226 F.3d 1226, 1229 (11th Cir.2000) (citations omitted)).

*DiMaio,* 520 F.3d at 1301. In order for Barber to establish standing she must, at a minimum, show "(1) [she] has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; **(2) the injury is fairly traceable to the challenged action of the defendant**; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." (emphasis added) (internal citations omitted) *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000) (quotations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements,"

sometimes referred to as the three "prongs" of the *Lujan* test. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Because Barber cannot show an injury "traceable" to any act of Defendants, this case should be dismissed.

**V. Barber's failure to articulate any wrongful act committed by Defendants should result in a dismissal of the complaint.**

"Under *Federal Rule of Civil Procedure* 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' ' " (internal citations omitted) *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).

Barber's complaint tells a story about how she felt she was wronged by people not associated with Shaul and Moody. Her litigation history illustrates the very nature of who she believes "injured" her. Although the complaint mentions Shaul and Moody as defendants, the narrative contained therein makes clear that Barber believes Charles Robinson, Jr., counsel for her former client, and trial court Judge Javan Patton are the individuals responsible for her plight. Defendants had nothing to do with the conduct of Mr. Robinson or Judge Patton. Defendants prosecuted Barber for the reasons affirmed by the Supreme Court of Alabama, not out of personal animosity or retaliation. In fact, because the Supreme Court of Alabama entered its final order

(including the sanction for frivolous filings) prior to Barber's disciplinary matter, all the operative facts and defenses had already been settled as a matter of law. That is, it is highly unlikely the Disciplinary Board could have reached a conclusion different than that of the Supreme Court of Alabama since both proceedings were operating under the exact same facts.

Because Barber fails to set forth sufficient facts to establish Defendants did anything improper, or that she has stated a plausible claim for relief, this matter is due to be dismissed pursuant to Rule 12(b)(6), *Federal Rules of Civil Procedure.*

**VI. Barber's claims are barred on immunity grounds.**

**A. Defendants, acting as agents and employees of the Alabama State Bar, are entitled to quasi-judicial immunity.**

Barber alleges in conclusory fashion that Defendants engaged in a variety of actions resulting in violation of her constitutional rights. However, Barber's allegations are insufficient to support a claim that Defendants' conduct clearly went beyond the line and scope of their role as prosecutors within the lawyer disciplinary proceedings. Defendants are immune from suit for decisions in the lawyer disciplinary process. Rule 15, *Alabama Rules of Disciplinary Procedure*, is a codification of the quasi-judicial immunity afforded to such members of the State Bar who exercise discretion in the performance of a judicial function. *D.A.R. v. R.E.L. et al.*, 272 So. 3d 1030, 1036-37 (Ala. 2018)(absolute immunity "language of Rule 15(a) is unequivocal); See, *e.g., Simons v. Bellinger,* 643 F. 2d 774, 777-785 (D.C. Cir. 1980) (examining the issue in great detail and granting absolute immunity to committee members of the D.C. bar for their actions in determining whether and how to proceed on a complaint); *See also, Cohran v. Georgia,* 790 F. Supp. 1568, 1574-75 (N.D. Ga. 1992) ("State bar disciplinary proceedings are judicial in nature.").

**B. The Alabama State Bar, as an arm of the Alabama Supreme Court, has sovereign immunity under the 11th Amendment to the United States Constitution.**

The Alabama State Bar (and its officials and employees) is an arm of the Alabama Supreme Court and cannot be sued in federal court because the State of Alabama has not waived its 11th Amendment immunity. *McFarland v. Folsom,* 854 F. Supp. 862, 872 (M.D. Ala. 1994)("'this conditional limitation on the exercise of federal jurisdiction applies not only to the state sued in its own name, but to state agencies acting under its control, or as 'arms of the state'") (quoting *Welch v. Texas Dep't of Highways and Pub. Transp.,* 483 U.S. 468 (1987); *Simmons v. Conger*, 86 F.3d 1080, 1084 ( 11th Cir. 1996) (holding district court erred in awarding damages against state circuit court judge in his official capacity, given that such relief is barred by the 11th Amendment.); *See also, Krempp v. Dobbs,* 775 F. 2d 1319, 1321 (5th Cir. 1985) ("Plaintiffs' claims for damages against the State Bar and the State Commission on Judicial Conduct are barred by the [E]leventh Amendment.") The Defendants are therefore entitled to absolute immunity in their official capacities under the 11th Amendment.

**C. <u>Defendants are entitled to qualified immunity on damage claims against them individually.</u>**

Defendants, sued in their individual capacity under 42 U.S.C. § 1983 for violation of the United States Constitution and federal law, are entitled to qualified immunity if performing a discretionary function. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). Defendants were at all times acting in their official capacity and exercising discretion within the jurisdiction afforded the Alabama State Bar, its Disciplinary Board, and its employees and agents during lawyer disciplinary proceedings. Having established that Defendants were engaged in a discretionary function, Barber bears the burden of demonstrating by sufficient factual allegations that Shaul and Moody are not entitled to qualified immunity. *Crosby*, 394 F.3d at 1332. Absent

sufficient factual allegations, Shaul and Moody are entitled to judgment as a matter of law. See *Marsh v. Butler County,* 268 F. 3d 10 14, 1028 (11th Cir. 2001).

**D. <u>Defendants are entitled to state agent immunity.</u>**

In *Ex Parte Cranman,* 792 So. 2d 392 (Ala. 2000), "[t]he Court reset the parameters of State-agent immunity by specifying the type of conduct for which [state agent] immunity would be afforded and the circumstances in which it would not be." *LeFrere v. Quezada,* 582 F.3d 1260, 1265 (11th Cir. 2009).

The Court in *Ex parte Cranman,* 792 So. 2d 392, 405 (Ala. 2000), held, in pertinent part:

> We therefore restate the rule governing State-agent immunity:
>
> A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> (1) formulating plans, policies, or designs; or
>
> (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
>
> > (a) making administrative adjudications;
> >
> > (b) allocating resources;
> >
> > (c) negotiating contracts;
> >
> > (d) hiring, firing, transferring, assigning, or supervising personnel; or
>
> (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
>
> 4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
>
> (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
>
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

Defendants are entitled to protection from suit in their individual capacity under the doctrine of state agent immunity as recognized in *Ex parte Cranman.* At all times, Shaul and Moody were acting and discharging duties imposed on the agency by statute, rule and/or regulation and were discharging such duties in the manner prescribed. Furthermore, there is absolutely no basis upon which to find that Shaul or Moody, individually or collectively, acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law at any time during the lawyer disciplinary proceedings. Therefore, state agent immunity is available to both, and this matter should be dismissed.

**CONCLUSION**

Upon consideration of the foregoing, the Defendants pray that this Court will dismiss the Plaintiff's complaints and Amended Complaints.

Respectfully Submitted,



Roman A. Shaul
ASB-5043-S58R
General Counsel
Alabama State Bar
415 Dexter Ave.
Montgomery, Alabama 36104
Telephone: 334-269-1515

roman.shaul@alabar.org

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I further hereby certify that I have mailed by United States Postal Service and electronically mailed the document to the following non-CM/ECF participant:

Beverly O. Barber
105 Florida Road
Pell City, Alabama 35125-3831



General Counsel
Alabama State Bar