FILED
2026 Sep-24 AM 11:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BEVERLY BARBER,** | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:25-cv-00671-MHH** |
| | } | |
| **ROMAN SHAUL, et al,** | } | |
| | } | |
| **Defendant.** | } | |

# MEMORANDUM OPINION AND ORDER

Ms. Beverly Barber has sued Roman Shaul, the General Counsel for the Alabama State Bar, and Mark Moody, the Assistant General Counsel for the Alabama State Bar, in their individual and official capacities. Ms. Barber alleges that the Bar's "disciplinary proceeding against [her] represent[] not justice, but vengeance—a calculated effort to silence truth-telling through the systematic exclusion of exculpatory evidence, protection of documented misconduct by favored attorneys, and the weaponization of professional discipline." (Doc. 7, p. 1). The defendants have moved to transfer this case to the Honorable Corey L. Maze because he has handled many of Ms. Barber's federal lawsuits concerning the state disciplinary proceedings. (Doc. 15). Alternatively, the defendants ask the Court to dismiss Ms. Barber's complaint because the complaint is a shotgun pleading, the Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine because

Ms. Barber's claimed injuries arose from a state-court judgment, Ms. Barber has not pleaded acts by Mr. Shaul or Mr. Moody that caused her injuries, and these defendants are immune from Ms. Barber's claims. (Doc. 15). Ms. Barber has moved to supplement the record and amend the complaint, and she asks the Court to hold a status conference and evidentiary hearing. (Docs. 23, 25, 26, 27, 28). This opinion resolves the pending motions.

***

A party may move to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rule 12(b)(6) allows a defendant to move to dismiss claims for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In deciding a Rule 12(b)(6) motion to dismiss, a court must view the allegations in a complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). A court must accept well-pleaded facts as true. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). "[A]lthough [courts] ordinarily construe *pro se* pleadings liberally, there is no need for a liberal construction where the *pro se* litigant is an attorney." *Davis v. Nahmias*, No. 21-14424, 2022 WL 5128153, at *2 n.3 (11th Cir. Oct. 5, 2022) (citations omitted) (rejecting argument that district court erred in failing to liberally construe disbarred pro se attorney's complaint); *see also Olivares v. Martin*, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977) (citation omitted) ("We cannot accord [the *pro se* plaintiff] the advantage of the liberal construction of his complaint normally given pro se litigants because he is a licensed attorney.").[1] In deciding a motion to dismiss, "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

---

[1] Fifth Circuit cases decided before October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Federal Rule of Civil Procedure 10(b) requires a complaint to contain "numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." FED. R. CIV. P. 10(b). As the Eleventh Circuit has explained:

> Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as "shotgun pleadings."
>
> ….
>
> [W]e have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320–23 (11th Cir. 2015) (footnotes omitted).

In addition to the requirements of Rules 8 and 10, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Elaborating on this standard, the Eleventh Circuit has stated:

> Rule 9(b) requires the plaintiff to allege "the who, what, when, where, and how" of the fraudulent conduct. Stated differently, the plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiff; and (4) what the defendants gained by the alleged fraud."

*Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1296 (11th Cir. 2025) (internal brackets omitted) (citations omitted).

"Whether a plaintiff 'alleges fraud' under Rule 9(b) depends on the factual allegations underlying a plaintiff's claim—not how the plaintiff styles his claim." *Pop*, 145 F.4th at 1293 (internal brackets omitted) (citations omitted). For example, the Eleventh Circuit has "found that unjust enrichment, civil theft, and negligent misrepresentation claims that 'sound in fraud' must comply with Rule 9(b)'s particularity requirement[,] . . . even though the elements of unjust enrichment, civil theft, and negligent misrepresentation do not perfectly overlap with the elements of

fraud." *Pop*, 145 F.4th at 1293. While "acknowledg[ing] that more precise guidance might be needed in future cases," the Eleventh Circuit has stated that, in general, "[t]he most straightforward way of making the determination is by comparing a plaintiff's [factual] allegations to the elements of common law fraud." *Pop*, 145 F.4th at 1294 & n.8. While "fraud has no all-embracing definition[,] . . . all agree that it encompasses the following: [a] false representation of a material fact made by one who knew that it was false, made to one who did not know it was false, with intent to deceive such person and to influence his action, which did deceive such person and influence his action to his damage." *Pop*, 145 F.4th at 1294–95 (internal alterations and quotation marks omitted) (citation omitted). "At bottom, the 'basic conduct' that common law fraud targets is 'misrepresenting or concealing material facts.'" *Pop*, 145 F.4th at 1295 (citation omitted).

"'Fraud upon the court' is . . . [a] species of fraud which does or attempts to[] defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985) (quoting 7 *Moore's Federal Practice* ¶ 60.33) (discussing fraud on the court in the context of a Rule 60(b)(3) motion).

Ms. Barber broadly alleges that "[a] fraud was perpetrated against Barber by Defendants to destroy her livelihood and reputation with documented fraudulent

evidence." (Doc. 7, p. 16, ¶ 33); *see* (Doc. 7, pp. 6, 16, 17, 20–21, ¶¶ 10, 33, 37, 43, 47) (alleging "fraud" in factual background section and every count other than Count I); (Doc. 7, pp. 2–3, 5, 7–9, 11–15, 18, 20–21 ¶¶ 1, 3, 10, 11.d, 12–16, 21–22, 26–27, 31–33, 39, 44–47) (broadly alleging corruption of judicial or quasi-judicial systems by officers of the court throughout complaint). Accordingly, the Court applies Rule 9(b) to Ms. Barber's complaint.

Under Rule 15(a), "[a] party may amend its pleading once as a matter of course" within certain time limits. FED. R. CIV. P. 15(a)(1). A plaintiff must obtain permission from a district court or the opposing parties for additional amendments. FED. R. CIV. P. 15(a)(2). "[R]ulings on . . . [motions for] leave to amend . . . are entrusted to the sound discretion of the trial court and are reviewed only for abuse of discretion." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999). "In deciding whether to grant a party leave to amend a pleading, a district court may consider several factors, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment.'" *Equity Lifestyle Props., Inc. v. Fla. Mowing and Landscape Serv., Inc.*, 556 F.3d 1232, 1241 (11th Cir. 2009) (internal brackets omitted) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Likewise, under Rule 15(d), "[o]n motion and reasonable notice, the court

may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense." FED. R. CIV. P. 15(d). "The decision whether to grant a motion for leave to file supplemental pleadings is generally within the discretion of the district court." *Georgia Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1126 (11th Cir. 2022) (citing FED. R. CIV. P. 15(d)). "[I]t is generally agreed that the standard applicable to a motion to supplement under Rule 15(d) is the same as that to amend under Rule 15(a)." *Royal Marco Point 1 Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 07-cv-00016, 2008 WL 11333625, at *1 (M.D. Fla. Sept. 5, 2008) (citation omitted); *see also Harris v. Garner*, 216 F.3d 970, 987 n.6 (11th Cir. 2000) (Tjoflat, J., concurring in part).

***

In her second amended complaint, Ms. Barber has not provided context for her factual allegations. Consequently, the Court has considered Judge Maze's summaries of the underlying state-court proceedings to better understand Ms. Barber's factual assertions in this action. The Court has reviewed *Barber v. Robinson* ("*Robinson I*"), No. 23-cv-01621, 2024 WL 3879409 (N.D. Ala. Aug. 19, 2024); *Barber v. Robinson* ("*Robinson II*"), No. 25-cv-00652, 2025 WL 3083078

(N.D. Ala. Nov. 4, 2025); *Barber v. Mitchell*, No. 23-cv-00484, 2024 WL 694026 (N.D. Ala. Feb. 20, 2024); and *Barber v. Crayton*, No. 25-cv-01633, 2025 WL 3532146 (N.D. Ala. Sept. 29, 2025), *appeal dismissed*, No. 25-13454, 2025 WL 3515522 (11th Cir. Dec. 8, 2025). Courts "may take judicial notice of factual circumstances from a previous case." *Pinson v. JPMorgan Chase Bank, Nat'l Assn*, 942 F.3d 1200, 1210 (11th Cir. 2019).

Ms. Barber represented Charles Mitchell in a medical malpractice suit and perhaps in other lawsuits. (Doc. 7, p. 4); *Mitchell*, 2024 WL 694026, at *1. In August 2021, Ms. Barber sued Mr. Mitchell in state court for $150,000 in attorney's fees that Mr. Mitchell allegedly owed her. (Doc. 7, p. 4); *Robinson I*, 2024 WL 3879409, at *1. The Honorable Javan Patton Crayton presided over the state-court lawsuit. (Doc. 7, p. 4). "[A] jury rejected [Ms.] Barber's claim for unpaid attorneys' fees and instead awarded [Mr.] Mitchell $750,000 for [Ms.] Barber's abuse of the legal process." *Robinson I*, 2024 WL 3879409, at *1, *4.

In the state-court action for attorney's fees, Ms. Barber asserted an attorney's lien on Mr. Mitchell's property and filed a lis pendens notice. *Robinson I*, 2024 WL 3879409, at *1–2; *Mitchell*, 2024 WL 694026, at *1. As a counterclaim to Ms. Barber's suit, Mr. Mitchell alleged that the lis pendens was wrongful and caused a $4 million sale of the property to fall through. *Robinson I*, 2024 WL 3879409, at *2–4. Ms. Barber alleges that her lis pendens did not cause the failed sale; rather,

the sale collapsed because "the property failed inspection for development purposes." (Doc. 7, p. 5); *Robinson I*, 2024 WL 3879409, at *2. Charles E. Robinson represented Mr. Mitchell in Mr. Mitchell's litigation against Ms. Barber. (Doc. 7, p. 5); *Robinson I*, 2024 WL 3879409, at *1. Judge Patton granted summary judgment on Mr. Mitchell's counterclaims and entered a $1.17 million judgment after an evidentiary hearing on damages. *Robinson I*, 2024 WL 3879409, at *2. Combining the counterclaim and jury awards, the judgment against Ms. Barber totaled nearly $2 million.

"On April 18, 2025, the Alabama Supreme Court issued a certificate of judgment affirming the nearly $2 million state court judgment for [Mr.] Mitchell and granting [Mr.] Mitchell's motion to sanction [Ms.] Barber for vexatious state court filings." *Robinson II*, 2025 WL 3083078, at *1 (citing *Barber v. Mitchell*, St. Clair Cnty. Case No. 75-cv-2021-900150 (Doc. 1290)). The Alabama Supreme Court ordered Ms. Barber to pay $50,000 in sanctions to Mr. Mitchell and/or Mr. Robinson. *Robinson II*, 2025 WL 3083078, at *1; (Doc. 7, pp. 2, 5, 7, 11–12).

On April 22, 2025, based largely on Ms. Barber's conduct in her civil lawsuit against her former client, Panel II of the Disciplinary Board of the Alabama State Bar suspended Ms. Barber's license to practice law. *See In re Barber*, Nos. 2023-1719, 2023-1787, 2024-147 (Ala. State Bar Disciplinary Board Apr. 22, 2025), *aff'd*,

No. SC-2025-0262 (Ala. Sept. 12, 2025) (per curiam).[2] The suspension and sanctions orders are final.

Ms. Barber has brought more than ten federal lawsuits relating to her suit against Mr. Mitchell and the associated disciplinary proceedings against her. *See Robinson II*, 2025 WL 3083078, at *2. Among others, she has sued Mr. Mitchell, Mr. Robinson, and Judge Crayton. In her suit against Mr. Robinson, Ms. Barber alleged that Mr. Robinson committed fraud upon the state courts. *See Robinson II*, 2025 WL 3083078, at *1–8. Judge Maze dismissed some of the claims for lack of jurisdiction under the *Rooker-Feldman* doctrine and dismissed other claims for failure to state a claim. *Robinson II*, 2025 WL 3083078, at *1–8.

Here, Ms. Barber repeats many of her allegations that Mr. Robinson committed fraud on the court. (Doc. 7, pp. 2–9, 11–12). Ms. Barber argues that Mr. Shaul and Mr. Moody "were aware of this system tampering and evidence of Robinson's obstruction of witness testimony, yet they excluded this evidence from disciplinary proceedings and failed to investigate or discipline [Mr.] Robinson for this conduct." (Doc. 7, p. 9, ¶ 15). Ms. Barber alleges that the defendants collectively participated in the fraud on the court, improperly pursued disciplinary

[2] Copies of the Alabama State Bar's disciplinary opinion and the Supreme Court's per curiam affirmance are attached to this order. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 653 (11th Cir. 2020) ("We think the best practice would be to include copies of any judicially noticed records as part of the Order that relies upon them, so as to ensure the inmate receives them."). The disciplinary opinion provides greater detail about the federal and state suits Ms. Barber has filed.

proceedings against her, and attempted to embarrass her by serving disciplinary papers "in open packages." (Doc. 7, pp. 8–21). Ms. Barber asserts § 1983 claims against the defendants for alleged violations of the First and Fourteenth Amendments. Ms. Barber also asserts a conspiracy claim under 42 U.S.C. § 1985. (Doc. 7, pp. 19–21).

Ms. Barber has filed several attempted amendments or supplements to her second amended complaint, all without consent from the defendants or prior authorization from the Court. *See* Fed. R. Civ. P. 15(a) (stating that after a party's first amendment of a pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave"). For example, without the defendants' consent or the Court's permission, Ms. Barber filed a document titled "Supplement in Opposition to Defendants' Motion to Dismiss" to which she attached a "listing of violations by the defendants" that she asked the Court to consider. (Doc. 21, p. 2). Again, without the defendants' consent or the Court's permission, Ms. Barber filed a document titled "Rule 15 Supplement to Complaint" to "bring to this Court's attention newly discovered evidence that devastatingly proves the original allegations and demonstrates ongoing constitutional violations" by the defendants. (Doc. 23, p. 1). The Court will not consider these submissions because they violate Rule 15(a).

On March 6, 2026, Ms. Barber filed a "Motion to Supplement the Record with

Notice to the Alabama State Bar Board of Bar Commissioners." (Doc. 25). In the motion, Ms. Barber states that she filed a complaint with the Alabama State Bar Board of Bar Commissioners repeating the allegations in this action; Ms. Barber attached the bar complaint to her motion. (Doc. 25, pp. 2, 8-19). Ms. Barber alleges that "the Board's response – or failure to respond – to a facially valid whistleblower complaint invoking its own Bylaws will constitute additional evidence of the institutional acquiescence in Defendants' conduct." (Doc. 25, p. 4). Ms. Barber notes that the state had scheduled a "forced auction of all of Plaintiff's assets valued in excess of one hundred dollars" for March 16, 2026 to satisfy the state-court judgment against her. (Doc. 25, p. 4).

On June 9, 2026, Ms. Barber filed a "Motion for Status Conference and Request for Evidentiary Hearing." The motion includes new factual allegations about evidence that Ms. Barber says "directly contradicts the evidentiary predicate upon which the Bar's charges and recommendations rested." (Doc. 27, pp. 3–7). On June 18, 2026, Ms. Barber filed a "Motion for Leave to File Amended Complaint" and attached to her motion a proposed third amended complaint. (Doc. 28). The proposed third amended complaint is similar to the second amended complaint.

***

In general, "a court must first determine whether it has proper subject matter jurisdiction before addressing the substantive issues" in a lawsuit. *Taylor v. Appleton*, 30 F.3d 1365, 1366 (11th Cir. 1994). The defendants argue that this Court lacks jurisdiction over this action under the *Rooker-Feldman* doctrine because Ms. Barber is collaterally attacking state-court judgments. (Doc. 15, pp. 5–7). The *Rooker-Feldman* doctrine 'is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments.'" *Efron v. Candelario*, 110 F.4th 1229 (11th Cir. 2024) (quoting *Alvarez v. Att'y Gen. of Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012)), *cert. denied*, 145 S. Ct. 1958 (2025). The *Rooker-Feldman* doctrine bars federal district court actions "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Efron*, 110 F.4th at 1235 (11th Cir. 2024) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). For purposes of the *Rooker-Feldman* doctrine, a trial court judgment is final when entered even if state appeals have not been exhausted. *T. M. v. Univ. of Maryland Med. Sys. Corp.*, 146 S. Ct. 1739 (2026).

"If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies." *Efron*, 110 F.4th at 1236. "[T]he *Rooker-Feldman* doctrine does not cease to operate simply because the plaintiff requests something

other than the vacatur of a state decision." *Efron*, 110 F.4th at 1236 (citation omitted). In other words, "the claim for relief, alone, is not determinative: the question is . . . whether the substance—if not the form—of a plaintiff's claim requires a district court to 'review' and 'reject' a state court judgment." *Efron*, 110 F.4th at 1238 (citation omitted). Still, "[t]he type of relief sought by the plaintiff" is a relevant factor to consider. *Efron*, 110 F.4th at 1238 (citing *Behr v. Campbell*, 8 F.4th 1206, 1214 (11th Cir. 2021)). "[C]ourt[s] should follow a claim-by-claim approach when determining whether *Rooker-Feldman* bars a plaintiff's claims from review in a federal district court." *Efron*, 110 F.4th at 1236 (citation omitted).

The lack of detail and context in Ms. Barber's second amended complaint makes it difficult to assess the extent of the claims covered by the *Rooker-Feldman* doctrine, but it appears that some claims are jurisdictionally barred and some are not. The *Rooker-Feldman* doctrine bars Ms. Barber's claims to the extent those claims rest upon the proposition that the defendants' conduct improperly influenced state court judgments, including disciplinary judgments of the State Bar, and those judgments harmed Ms. Barber. For example, under the *Rooker-Feldman* doctrine, this Court may not grant Ms. Barber's requests to "[r]everse all disciplinary sanctions against Plaintiff as fundamentally unfair and constitutionally defective," "[r]emove coercive reinstatement conditions requiring payment to attorneys whose misconduct was exposed," and "[e]xpunge Plaintiff's disciplinary record as the

charges were retaliatory and procedurally defective," at least to the extent those sanctions were imposed on Ms. Barber before May 1, 2025. (Doc. 7, p. 22).[3] On the other hand, for example, *Rooker-Feldman* does not bar Ms. Barber's First Amendment claim for compensatory damages for emotional distress based on "retaliatory service tactics," (Doc. 7, pp. 9–10, 18, 23), because this claim would not implicate the validity of a state court judgment.

The claims that survive the *Rooker-Feldman* doctrine fail on other grounds. For one, Ms. Barber's complaint is a shotgun pleading and fails to meet federal pleading standards. Ms. Barber's complaint falls into *Weiland*'s first, second, and fourth categories of shotgun pleading. Ms. Barber's complaint does not meet Rule 8's requirement of a "short and plain" statement. FED. R. CIV. P. 8. Ms. Barber's complaint also fails to meet the requirements of Rule 9 because she has not alleged the "who, what, when, where, and how" of the alleged fraud on the court. *Pop*, 145 F.4th at 1296 (internal brackets omitted). Ms. Barber has not alleged which of the

---

[3] To the extent that Ms. Barber challenges ongoing contempt or disciplinary proceedings, the Court abstains from such challenges under the *Younger* abstention doctrine. Under *Younger*, a federal district court should abstain from hearing a case "involving pending state criminal prosecutions," "pending [state] civil proceedings that are 'akin to a criminal prosecution,'" and "strictly civil proceedings which implicate state courts' 'important interests in administering certain aspects of their judicial systems.'" *Green v. Jefferson Cnty. Comm'n*, 563 F.3d 1243, 1250–51 (11th Cir. 2009) (brackets added). The United States Supreme Court has held that district courts should apply *Younger* abstention to challenges to state contempt proceedings. *See Juidice v. Vail*, 430 U.S. 327, 335 (1977). While not strictly jurisdictional, courts generally treat *Younger* abstention as a factual attack on jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See, e.g.*, *Belevich v. Thomas*, No. 17-cv-011932018 WL 1244493, at *2 & n.2 (N.D. Ala. Mar. 9, 2018) (collecting cases).

defendants took which action she attributes to them and has not identified "the precise statements, documents, or misrepresentations made" or the time and place of the alleged misrepresentations. *Pop*, 145 F.4th at 1296.

In addition, several immunity doctrines bar Ms. Barber's damages claims. The Eleventh Amendment bars Ms. Barber's damages claims against the defendants in their official capacities as General Counsel and Assistant General Counsel of the Alabama State Bar. *See, e.g.*, *Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir. 1993) (citation omitted) ("[T]he Eleventh Amendment bars federal suits against state officials in their 'official capacity' because such actions seek recovery from state funds."); *Nichols v. Alabama State Bar*, 815 F.3d 726, 732 (11th Cir. 2016) ("[T]he Alabama State Bar is an arm of the state of Alabama and thus enjoys Eleventh Amendment immunity from . . . § 1983 claim[s].").

The doctrines of absolute quasi-judicial or prosecutorial immunity bar Ms. Barber's damages claims against the defendants in their individual capacities. *See, e.g.*, *Kivisto v. Soifer*, 587 Fed. Appx. 522, 523 (11th Cir. 2014) (citations omitted) ("Prosecutors, including state bar disciplinary advocates, are absolutely immune from all suits challenging their prosecutorial advocacy functions, so long as those functions occur within their territorial jurisdictions."); ALA. R. DISCIPLINARY P. 15(b) (providing for absolute immunity for various officials including the Bar's "General Counsel and the staff of the Office of General Counsel" in connection with

disciplinary proceedings); *Caffey v. Alabama Supreme Ct.*, 469 Fed. Appx. 748, 752 (11th Cir. 2012) (citing *Carroll v. Gross,* 984 F.2d 392, 393 (11th Cir. 1993)) ("[T]he State Bar defendants enjoyed immunity for actions taken during the course of their official duties.").

Ms. Barber argues that prosecutorial immunity should not insulate the defendants because the defendants purportedly fabricated evidence, (Doc. 18, p. 20) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)), but in her second amended complaint, Ms. Barber makes no such allegation. Instead, she alleges that the defendants knew that Mr. Robinson was lying but "made him their star witness" anyway, and the defendants should not have pursued disciplinary proceedings against her at all. (Doc. 7, pp. 1, 9, 11). These allegations do not defeat prosecutorial immunity. *See, e.g.*, *Imbler v. Pachtman*, 424 U.S. 409, 426 (1976) ("The veracity of witnesses in criminal cases frequently is subject to doubt before and after they testify, as is illustrated by the history of this case. If prosecutors were hampered in exercising their judgment as to the use of such witnesses by concern about resulting personal liability, the triers of fact in criminal cases often would be denied relevant evidence."); *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) ("A prosecutor is immune for malicious prosecution."); *Porter v. White*, 483 F.3d 1294, 1305 n.8 (11th Cir. 2007) ("Injury flowing from a procedural due process violation (i.e., incarceration following a constitutionally unfair trial) that results from a prosecutor's

failure to comply with the Brady rule cannot be redressed by a civil damages action against the prosecutor under § 1983 because the prosecutor is absolutely immune from such liability."). The *Younger* abstention doctrine bars Ms. Barber's claims for injunctive relief to the extent the claims concern ongoing disciplinary proceedings against Ms. Barber or other lawyers.

The Court denies Ms. Barber's motions to supplement the record or amend her complaint again. (Docs. 26, 28). These documents are deficient, procedurally and substantively, for the reasons Ms. Barber's second amended complaint is deficient. To the extent Ms. Barber attempts to add factual detail about events that occurred before she filed her second amended complaint, Ms. Barber has delayed too long and without adequate explanation in attempting to add these allegations. Accepting the amendment now would prejudice the defendants by causing them to incur additional costs in re-briefing their motion to dismiss. Ms. Barber's allegations about new events, such as those involving Judge Crayton, are the subjects of other lawsuits pending before Judge Maze, and the allegations do not alter the immunity analysis that precludes claims that the *Rooker-Feldman* doctrine does not bar. Ms. Barber's undue delay and "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and[/or] futility of amendment'" preclude her efforts to amend her pleading again. *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv.,*

*Inc.*, 556 F.3d 1232, 1241 (11th Cir. 2009) (internal brackets omitted) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

***

Accordingly, the Court grants the defendants' motion to dismiss. (Doc. 14). The dismissal is without prejudice for lack of jurisdiction for claims covered by the *Rooker-Feldman* doctrine or *Younger* abstention. To the extent that Ms. Barber's claims are not covered by these doctrines, the Court dismisses the claims with prejudice. The Court denies Ms. Barber's efforts to supplement or amend the complaint. (Docs. 21, 23, 25, 26, 28). Ms. Barber's motion for a status conference and evidentiary hearing is moot. (Doc. 27).

The Clerk of Court shall please TERM Docs. 14, 25, 27, and 28 and mail and email a copy of this order to Ms. Barber's addresses on file.

**DONE** and **ORDERED** this September 24, 2026.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE